IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

JONATHAN A. WHEELER,        :
        :
      **Plaintiff,**        :
        :
**V.**        :
        :     **NO. 5:23-cv-00164-TES-CHW**
**JOSEPH POLITE, *et al.*,**        :
        :
      **Defendants.**        :
        :

## ORDER & RECOMMENDATION

Plaintiff Jonathan A. Wheeler, a prisoner in the Georgia Diagnostic and Classification Prison in Jackson, Georgia, filed a complaint pursuant to 42 U.S.C. § 1983. Compl., ECF No. 1. Plaintiff also filed a motion for leave to proceed in this action *in forma pauperis*. Mot. for Leave to Proceed *In Forma Pauperis*, ECF No. 2. Upon consideration of these filings, Plaintiff's motion for leave to proceed *in forma pauperis* was denied, and Plaintiff was ordered to pay the $402.00 filing fee if he wanted to proceed with this action. Order, ECF No. 5. Plaintiff was given fourteen days to pay the filing fee and was cautioned that his failure to do so could result in the dismissal of this case. *Id.*

After that order was entered, Plaintiff filed, among other things, a new motion for leave to proceed in this action *in forma pauperis*. Mot. for Leave to Proceed *In Forma Pauperis*, ECF No. 7; Prisoner Trust Fund Account Statement, ECF No. 9. The new motion still showed that Plaintiff had sufficient funds in his account to pay the initial partial filing fee, and Plaintiff did not assert that he could not pay the fee or identify any changed

financial circumstances that prevented him from doing so.   *See id.*   To the contrary, Plaintiff also filed a separate motion asking the Court to order that the money be withdrawn from his account.   Mot., ECF No. 8.   Therefore, the new motion to proceed *in forma pauperis* (ECF No. 7) was denied.   Order, ECF No. 10.   The Court also declined to order the business office to withdraw funds from Plaintiff's account, and instead, directed Plaintiff to again attempt to have the fee paid from his account.   *Id.*   If Plaintiff was still unable to have the fee paid from his account, Plaintiff was instructed to provide the Court with information regarding his efforts to do so.   *Id.*

Plaintiff has now filed a response in which he sets forth the steps that he has taken to attempt to have the fee paid from his account.   Response, ECF No. 11.   Based on this response, it appears that Plaintiff has attempted to comply with the Court's order for him to pay the filing fee but has been prevented from doing so through no fault of his own. *See id.*   Therefore, the requirement that Plaintiff prepay the filing fee will be **WAIVED**. Plaintiff remains responsible for the full filing fee to be paid in installments, as set forth below.

Because the filing fee issue has been resolved, Plaintiff's case is now ripe for preliminary review.   On that review, Plaintiff will be permitted to proceed for further factual development on his claim that Commander Ersell McCullum was responsible for a use of excessive force against Plaintiff.   It is **RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

## FILING FEE PAYMENTS

Although prepayment of the filing fee has been waived, Plaintiff is still responsible

for the full filing fee.   In this regard, payments must be paid in monthly installments as set forth below.   The district court's filing fee is not refundable, regardless of the outcome of the case, and must therefore be paid in full even if Plaintiff's complaint is dismissed prior to service.   For this reason, the **CLERK** is **DIRECTED** to forward a copy of this Order to the business manager of the facility in which Plaintiff is incarcerated so that withdrawals from his account may commence as payment towards the filing fee, as explained below.

### A.   Directions to Plaintiff's Custodian

Because prepayment of the filing fee has been waived, it is hereby **ORDERED** that the warden of the institution wherein Plaintiff is incarcerated, or the Sheriff of any county wherein he is held in custody, and any successor custodians, each month cause to be remitted to the **CLERK** of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's trust account at said institution until the $402.00 filing fee has been paid in full.   The funds shall be collected and withheld by the prison account custodian who shall, on a monthly basis, forward the amount collected as payment towards the filing fee, provided the amount in the prisoner's account exceeds $10.00.   The custodian's collection of payments shall continue until the entire fee has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

### B.   Plaintiff's Obligations Upon Release

An individual's release from prison does not excuse his prior noncompliance with the provisions of the PLRA.   Thus, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay

those installments justified by the income to his prisoner trust account while he was still incarcerated.   The Court hereby authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law in the event Plaintiff is released from custody and fails to remit such payments.   Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

**PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT**

I.    Standard of Review

Because he is a prisoner seeking redress against government officials, Plaintiff's complaint is subject to a preliminary review.   *See* 28 U.S.C. § 1915A(a) (requiring the screening of prisoner cases).   When performing this review, the court must accept all factual allegations in the complaint as true.   *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004).   *Pro se* pleadings are also "held to a less stringent standard than pleadings drafted by attorneys," and thus, *pro se* claims are "liberally construed."   *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).   Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."   28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact."   *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted).   The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless."   *Id.* (internal quotation marks

omitted).   A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original).   In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556.   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under §1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cty*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

II.   Factual Allegations

In his complaint, Plaintiff asserts that, in April 2022, he was moved from cell D-112 to cell E-216 in the Special Management Unit at GDCP.   Compl. 6, ECF No. 1.   In his new cell, the air vents were blocked, such that there was no ventilation in the cell. *Id.* Thereafter, when CERT Officer Wellmaker brought Plaintiff a meal, Plaintiff stuck his arm

through the door flap and told Wellmaker that he needed maintenance to come fix the ventilation problem, as well as drainage issues in his cell.   *Id.*   Plaintiff showed Wellmaker that Plaintiff was sweating due to being extremely hot, but Wellmaker said that it was too late to call anyone.   *Id.*

Wellmaker told Plaintiff to remove his arm from the door flap, but Plaintiff did not do so.   *Id.*   Instead, he asked Wellmaker for some "air time" with the flap open.   *Id.* Wellmaker then sprayed Plaintiff in the face and upper torso multiple times.   *Id.* Wellmaker also hit Plaintiff's arm, slammed the flap down on Plaintiff's arm, and kicked the flap.   *Id.* at 6-7.   Plaintiff could not breathe or speak, so he removed his arm from the flap.   *Id.* at 7.   Plaintiff was not provided his meal, was not taken to medical, and was not treated for the spray or the injuries to his arm.   *Id.*   Only after Plaintiff and other inmates began kicking and hitting their cell doors the next day was Plaintiff taken to get medical attention.   *Id.*

Plaintiff goes on to allege that, on April 25, 2022, the entire wing of his dorm had been flooding all weekend.   *Id.*   Deputy Warden Williams, Deputy Warden Ball, Unit Manager Turner, and Sergeant Barber all arrived in the dorm and began the day with a shakedown of the dorm.   *Id.*   After the search, the four officers began cleaning the water. *Id.*   Deputy Warden Williams instructed Sergeant Barber to clean the water on the top range and to run showers for the inmates when she was finished.   *Id.*

During the cleanup, Deputy Warden Williams, Deputy Warden Ball, and Unit Manager Turner got into an altercation with an individual in the cell below Plaintiff's cell. *Id.* at 7-8.   Plaintiff could hear Williams threatening to have the Interdiction Response

Team ("IRT") come get the inmate.   *Id.* at 8.   At that time, Sergeant Barber came to Plaintiff's cell and asked if he was ready to have his shower turned on.   *Id.*

Plaintiff informed Barber that his drain was still flooded and clogged, such that maintenance needed to be called.   *Id.*   Barber said that the Deputy Warden had directed Plaintiff to take a shower in his cell and that there were no maintenance personnel in the Special Management Unit.   *Id.*   Plaintiff continued to try to explain, but eventually, he told Barber to go ahead and turn on his shower.   *Id.*   Plaintiff asked Barber to look in the cell window so that she could see that his cell was filling up with water before she left.   *Id.*   Barber told Plaintiff to shower and not worry about the drain.   *Id.*

Sometime later, Deputy Warden Williams came upstairs and opened the pipe chase between cells E-215 and E-216.   *Id.*   Williams then turned on the shower.   *Id.*   Plaintiff and Butler, the inmate in cell E-215, told Williams to turn off the water because the problem was with the drains being clogged and not with the shower.   *Id.*   Williams ignored Plaintiff and began arguing with Butler.   *Id.*   After a few minutes of arguing, Williams said, "I want him," and when someone asked if he was sure, Williams said, "I want him next."   *Id.* at 8-9.   Williams then told Butler to leave on his shoes because Williams was coming back.   *Id.* at 9.

Plaintiff laid down in his bed and began reading his book.   *Id.*   He then heard the IRT marching up the stairs to his side of the dorm.   *Id.*   They stopped at Plaintiff's door, and Commander Ersell McCullen said that Plaintiff was being put on strip cell.   *Id.*   When Plaintiff asked why, McCullen radioed for Plaintiff's cell door to be opened.   *Id.*   Plaintiff stood up as IRT Murray came into the cell in full riot gear and carrying a shock shield.   *Id.*

Murray then charged Plaintiff with the shield while several other officers rushed in behind him. *Id.* The next thing Plaintiff remembers after that is waking up bent over his bunk and being handcuffed, put in ankle restraints, and "being punched and hit all over." *Id.* McCullen was telling Plaintiff to stop resisting. *Id.* Plaintiff was then picked up and walked to the cell door. *Id.*

Covered in blood, Plaintiff was escorted to medical by the IRT. *Id.* On the way, Plaintiff informed the IRT members that the leg irons were so tight that he could not walk with them on his legs. *Id.* McCullen tried to coax Plaintiff along, but Plaintiff said that they would have to carry him if they did not loosen the irons because he could not walk any further. *Id.* at 9-10. Plaintiff then went limp so that the officers had to carry him to medical. *Id.* at 10.

While in medical, an older nurse came up and took Plaintiff's vitals. *Id.* She noted that Plaintiff had cut his finger, although she could clearly see that he also had blood on his shoulder, right ear, and neck. *Id.* Plaintiff stated that it was his fault and asked her to send him back to his cell. *Id.* The IRT officers would not loosen the leg irons but picked Plaintiff up and carried him back to the dorm. *Id.* In the dorm, the IRT officers initially set Plaintiff down on the ground in toilet water that contained feces, but McCullen told them to pick Plaintiff back up because of the feces. *Id.* They then carried Plaintiff to a cell and stripped him of his clothing other than his boxer shorts. *Id.*

Plaintiff was told that he would receive his clothes back in eight hours. *Id.* The cell that Plaintiff was put into "was covered in feces, dirt, hair, mold, rust, and pepper spray residue." *Id.* Anything that Plaintiff touched caused his skin to burn even though he had

not been sprayed that day. *Id.* Plaintiff states that he was then "starved for two days, with no food, and no personal hygiene, clothes, showers, nothing was offered." *Id.* Plaintiff states that he was finally given clothing on the eighth day. *Id.* Although it is not clear from Plaintiff's allegations how long he was in the strip cell, at some point Plaintiff was moved to another cell and some, but not all, of his property was returned to him. *Id.* Most of his property was missing.

Thereafter, Plaintiff was served with a disciplinary report. *Id.* at 11. Plaintiff does not provide any information as to what the report charged, but he says that, after a hearing, he was found guilty even though his investigator/advocate counselor had stated that Plaintiff's drain and toilet were clogged. *Id.* Plaintiff asserts that he was "double sentenced" on the charge, but he does not explain what sentence he received or why it constituted a double sentence. *Id.*

III.   Plaintiff's Claims[1]

   A.   Joseph Polite, Brian Kemp, Timothy C. Ward, Joseph Nurse

Plaintiff names Joseph Polite, Brian Kemp, Timothy C. Ward, and Joseph Nurse as defendants in this case, but he does not include any facts in relation to any of these

---

[1]Plaintiff's statement of facts includes a section regarding a potential use of excessive force by CERT Officer Wellmaker, but Plaintiff does not list Wellmaker as a defendant in the caption or in any other list of the defendants in his complaint. *See* 1, 3, 6, ECF No. 1. Thus, Plaintiff's claims are not addressed as to Wellmaker. Even if Plaintiff had named Wellmaker as a defendant, it does not appear that such a claim would have been properly joined to Plaintiff's other claims. Rule 20(a)(2) of the Federal Rules of Civil Procedure permits joinder of defendants only when the right to relief asserted arises "out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Plaintiff's claims as to Wellmaker do not appear to be related to the other claims for the purposes of joinder.

defendants.  "[S]ection 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation."  *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted).  A district court properly dismisses a defendant where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that connect the defendant with the alleged constitutional violation. *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008) (citing *Pamel Corp. v. P.R. Highway Auth.*, 621 F.2d 33, 36 (1st Cir. 1980)).

Plaintiff may have included these defendants with the intent of holding them liable on the basis of their supervisory positions.  A § 1983 claim cannot be based on a theory of respondeat superior or vicarious liability.  *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004).  To state a claim against a supervisory official, a complaint must allege facts showing either that the supervisor personally participated in the alleged constitutional violation or that there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation.  *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1086-87 (11th Cir. 1986).  This may be done by alleging facts showing that the official either "(1) instituted a custom or policy which resulted in a violation of the plaintiff's constitutional rights; (2) directed his subordinates to act unlawfully; or (3) failed to stop his subordinates from acting unlawfully when he knew they would."  *Gross v. White*, 340 F. App'x 527, 531 (11th Cir. 2009) (per curiam) (citing *Goebert v. Lee County*, 510 F.3d 1312, 1331 (11th Cir. 2007)).

Plaintiff's complaint does not allege facts showing that these defendants personally

participated in the alleged constitutional violations or any facts to demonstrate a causal connection between these defendants and his claims.   At one point, Plaintiff refers to the "entire S.M.U. administration" as using their authority to conceal crimes, but this broad and generic allegation does not tie these particular defendants to Plaintiff's claims or otherwise state a claim for relief.   As a result, it is now **RECOMMENDED** that Plaintiff's claims as to Polite, Kemp, Ward, and Nurse be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

### B.   Ersell McCullen

The only remaining defendant is IRT Commander Ersell McCullen.   Plaintiff asserts that McCullen came to Plaintiff's cell door and told Plaintiff he was being put on strip cell.   When Plaintiff asked why, McCullen had the door opened and had Plaintiff forcibly removed from the cell.   During the removal, Plaintiff was charged with a shock shield, handcuffed, put in leg irons, punched, and hit.   These allegations raise a potential claim for excessive force.

The Eighth Amendment clearly prohibits the unnecessary and wanton infliction of pain, the infliction of pain without penological justification, and the infliction of pain grossly disproportionate to the severity of the offense.   *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).   To state an Eighth Amendment claim in this context, a plaintiff must allege conduct by a defendant that was objectively harmful enough to establish a constitutional violation and that the defendant acted with a sufficiently culpable state of mind, *i.e.*, that the defendant acted maliciously and sadistically to cause harm.   *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

Plaintiff's allegations suggest that the amount of force used may have exceeded any justification for the use of force.   Although it is not clear from Plaintiff's allegations that McCullen personally participated in the use of force, it appears that he was directing the other IRT members in the use of force.   Therefore, these allegations are sufficient to allow Plaintiff to proceed for further factual development on an excessive force claim against Ersell McCullen.

C.   Eighth Amendment

Plaintiff also more generally asserts that he was subjected to punishment that violated the Eighth Amendment.   The Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S 337, 349 (1981), but it also does not permit inhumane conditions, and it is settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."   *Helling v. McKinney*, 509 U.S. 25, 31 (1993).   In this regard, the Eighth Amendment, which prohibits "cruel and unusual punishments," places restraints on prison officials such as by preventing them from using excessive physical force against prisoners. *See Hudson v. McMilllian*, 503 U.S. 1 (1992).   These officials also must provide humane conditions of confinement; "ensure that inmates receive adequate food, clothing, shelter, and medical care;" and "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

Plaintiff includes certain factual allegations that could relate to conditions that violate the Eighth Amendment, such as that he was left in a cell for days without food,

showers, or clothing.   As noted above, Plaintiff's allegations as to some of these claims are unclear with regard to the extent or timing of the conditions.   Even if these conditions meet the Eighth Amendment standard, however, Plaintiff does not connect the alleged conditions to a defendant or show that any particular individual was responsible for subjecting Plaintiff to these conditions.   Plaintiff asserts that McCullen had Plaintiff placed into the cell, but he does not allege facts showing that McCullen had any knowledge of potentially unconstitutional conditions in the cell or played any role in how long Plaintiff was kept there.   Plaintiff does not include any facts connecting any other defendant to this claim.   Accordingly, it is **RECOMMENDED** that Plaintiff's general Eighth Amendment claim be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

> D.   <u>Deprivation of Property</u>

Finally, Plaintiff asserts that much of his property was taken from him and has not been returned.   This assertion potentially implicates the due process clause.   To state a claim for denial of due process, a plaintiff must allege that he was deprived of life, liberty, or property without due process of law.   *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (recognizing that prisoners "may not be deprived of life, liberty, or property without due process of law").   The Due Process Clause of the Fourteenth Amendment is not offended, however, when a government official deprives an individual of his personal property if the state makes available a meaningful post-deprivation remedy.   *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).   In this case, the State of Georgia provides Plaintiff an adequate post-deprivation remedy for the loss of his property through a state court action, which covers the unauthorized seizure of personal property by police officers.   *See* O.C.G.A. §§ 51-10-

1 through 51-10-6; *see also Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991) (finding no due process violation for the retention of the plaintiffs' cash by the police because Georgia "has provided an adequate post deprivation remedy" in O.C.G.A. § 51-10-1). Therefore, it is **RECOMMENDED** that Plaintiff's due process claim based on the deprivation of his property be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

IV.    Conclusion

As set forth above, Plaintiff will be permitted to proceed for further factual development on his claim that Commander Ersell McCullum was responsible for a use of excessive force against Plaintiff.   It is **RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

**OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this order and recommendation with the United States District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this order and recommendation.   The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.   Any objection is limited in length to **TWENTY (20) PAGES**.   *See* M.D. Ga. L.R. 7.4.   Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.   *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Because Plaintiff was denied leave to proceed *in forma pauperis* in this case, and the Court having found that Plaintiff has made colorable constitutional violation claims against Defendants Ersell McCullen, it is **ORDERED** that Plaintiff serve this Defendant and that he file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.   Defendant is reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

Plaintiff must secure service upon the Defendant in accordance with the provisions of Fed. R. Civ. P. 4.   The Court is providing Plaintiff with a Rule 4 Service Package, which contains instructions, the necessary forms to use for waiver of service, and a copy of Fed. R. Civ. P. 4.   While Plaintiff may request a waiver of service of summons from Defendant in accordance with Fed. R. Civ. P. 4(d), if Defendant does not waive service, Plaintiff must make arrangements with a person authorized to make service under Fed. R. Civ. P. 4(c). In accordance with Fed. R. Civ. P. 4(m), failure to achieve service within 90 days after filing of the Complaint may result in dismissal of this case.   If Plaintiff is financially unable to arrange for service of process, he may submit a motion to the Court in which he (1) explains to the Court what efforts he made to perfect service and (2) includes an affidavit in support of his claim of indigence, along with a certified copy of his trust fund account statement (or institutional equivalent) for the previous six-month period.

## DUTY TO ADVISE OF ADDRESS CHANGE

During this action, all parties shall at all times keep the Clerk of this Court and all

opposing attorneys and/or parties advised of their current address.   Failure to promptly advise the Clerk of any change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) for failure to prosecute.   Defendant is advised that he is expected to diligently defend all allegations made against him and to file timely dispositive motions as hereinafter directed.   This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.   A party need not serve the opposing party by mail if the opposing party is represented by counsel.   In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.   If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished (i.e., by U.S. Mail, by personal service, etc.).

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of Defendants from whom discovery is sought by Plaintiff. Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.   Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.   Plaintiff's deposition may be taken at any time during the time period hereinafter set out, provided that prior arrangements are made with his custodian.   Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Fed. R. Civ. P. 37 of the Federal Rules of Civil Procedure.

**IT IS HEREBY ORDERED** that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by Defendants (whichever comes first) unless an extension is otherwise granted by the Court upon a showing of good cause therefor or a protective order is sought by Defendants and granted by the Court.   This 90-day period shall run separately as to each Defendant beginning on the date of filing of each Defendant's answer or dispositive motion (whichever comes first).   The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall <u>not</u> be filed with the Clerk of Court.   No party shall be required to respond to any discovery not directed to him or served upon him by the opposing counsel/party.   The undersigned incorporates herein those parts of the Local

Rules imposing the following limitations on discovery: except with written permission of the Court first obtained, INTERROGATORIES may not exceed TWENTY-FIVE (25) to each party, REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and REQUESTS FOR ADMISSIONS under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.   No party is required to respond to any request which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

Dismissal of this action or requests for judgment will not be considered by the Court in the absence of a separate motion accompanied by a brief/memorandum of law citing supporting authorities.   Dispositive motions should be filed at the earliest time possible, but no later than one hundred-twenty (120) days from when the discovery period begins.

**SO ORDERED and RECOMMENDED**, this 19th day of October, 2023.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge