**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **JONATHAN A. WHEELER,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **V.** | : | |
| | : | **NO. 5:23-cv-00164-TES-CHW** |
| **JOSEPH POLITE,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## ORDER & RECOMMENDATION

Plaintiff Jonathan A. Wheeler, a prisoner in the Georgia Diagnostic and Classification Prison in Jackson, Georgia, filed a complaint pursuant to 42 U.S.C. § 1983. Compl., ECF No. 1. On preliminary review, Plaintiff was permitted to proceed for further factual development on his claim that Commander Ersell McCullum was responsible for a use of excessive force against Plaintiff, but it was recommended that Plaintiff's remaining claims be dismissed for failure to state a claim. R. & R., ECF No. 12. Plaintiff subsequently filed a motion for leave to amend his complaint. Mot. for Leave to Am., ECF No. 13. The District Judge adopted the report and recommendation and granted Plaintiff leave to amend his complaint. Order, ECF No. 14. Plaintiff has now filed an amended complaint, which is ripe for preliminary review. Am. Compl., ECF No. 15.

On preliminary review of Plaintiff's amended complaint, Plaintiff will be permitted to proceed for further factual development on his excessive force claims against Deputy Warden Joe Williams, Commander Ersell McCullen, and IRT Member Murray, as well as

his conditions of confinement claims against Williams and Sergeant Heather Barber and his deliberate indifference to a serious medical need claims against McCullen, Murray, and Nurse Harris.   It is **RECOMMENDED** that any claims against CERT Officer Braddeus Wellmaker, the deprivation of property claim against Deputy Warden Williams, and the due process claims against Williams and McCullen based on a second disciplinary report be **DISMISSED WITHOUT PREJUDICE** for the reasons discussed below.

## PRELIMINARY REVIEW OF PLAINTIFF'S AMENDED COMPLAINT

I.    Standard of Review

Because he is a prisoner seeking redress against government officials, Plaintiff's complaint is subject to a preliminary review.   *See* 28 U.S.C. § 1915A(a) (requiring the screening of prisoner cases).   When performing this review, the court must accept all factual allegations in the complaint as true.   *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004).   *Pro se* pleadings are also "held to a less stringent standard than pleadings drafted by attorneys," and thus, *pro se* claims are "liberally construed."   *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).   Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."   28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact."   *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted).   The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless."   *Id.* (internal quotation marks

omitted).   A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action."   *Twombly*, 550 U.S. at 555 (first alteration in original)*.*   In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim.   *Id.* at 556.   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Iqbal*, 556 U.S. at 678.

To state a claim for relief under §1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law.   *Hale v. Tallapoosa Cty*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal*.   See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

II.   Factual Allegations

In his amended complaint, Plaintiff asserts that, on April 12, 2022, he was moved to cell E-216 between 9:54 and 10:15 a.m.   Am. Compl. 1-2, ECF No. 15.   On stepping into the cell, Plaintiff told CERT Officer Braddeus Wellmaker that the cell was filthy and extremely hot.   *Id.* at 1.   Wellmaker secured the cell door and removed Plaintiff's

handcuffs. *Id.* Plaintiff then told Wellmaker that the ventilation was not working and repeated that the cell was filthy. *Id.* In particular, the toilet had urine and feces in the bowl, there was black muck or mold in the sink, the water would not drain, there were food trays with rotten food under the bunk, and there was hair and other grime in the locker box and on the floor and walls. *Id.* Before leaving, Wellmaker told Plaintiff that he would inform maintenance about the vents and get Plaintiff some chemicals to clean the cell. *Id.*

Wellmaker returned to Plaintiff's cell with the dinner tray around 5:00 p.m. that evening. *Id.* at 2. When Plaintiff's tray flap was open, Plaintiff again told Wellmaker that the cell was extremely hot and dirty. *Id.* Plaintiff asked for maintenance and cleaning supplies, but Wellmaker said that it was too late. *Id.* Plaintiff noted that he had been in the cell for seven hours. *Id.* He then stuck his arm out of the tray flap and told Wellmaker to call maintenance and bring him some cleaning supplies. *Id.*

Next, Wellmaker began slamming the flap down and kicking the flap against Plaintiff's arm. *Id.* Wellmaker also sprayed Plaintiff in the face and torso with pepper spray and then continued beating Plaintiff's arm in the flap. *Id.* At that point, Plaintiff could not breathe and was afraid that Wellmaker would break his arm, so Plaintiff pulled his arm back into his cell and Wellmaker secured the flap before continuing to deliver food trays. *Id.* Wellmaker did not return to Plaintiff's cell, take Plaintiff to medical, call maintenance, or allow Plaintiff to clean his cell. *Id.* Plaintiff was not given a meal that evening and did not eat until around 4:30 the next morning. *Id.* at 3.

On Monday, April 25, 2022, Plaintiff was in the same cell when the entire cell block was flooded. *Id.* Deputy Warden Joe Williams entered the dorm and became irate. *Id.*

He ordered IRT Commander Ersell McCullen to shake down the entire wing of the dorm. *Id.* After the shakedown, Williams became involved in an altercation with an offender, which him to become more angry, cursing and threatening other offenders at random. *Id.*

Williams next instructed Sergeant Heather Barber to run the showers for the inmates. *Id.* In doing so, Williams told Barber that, if the showers worked in the individual cells, the inmates were to shower in their cells. *Id.* Plaintiff informed Williams and Barber that the drain in his cell was clogged and would not drain. *Id.* He asked for maintenance to be called or for his shower drain to be unclogged. *Id.* at 3-4. Nevertheless, Plaintiff was told to shower in his cell. *Id.* at 4.

Barber then came to Plaintiff's cell and turned on his shower. *Id.* Plaintiff asked Barber to look into his cell so that she could see that it was flooding. *Id.* Barber told Plaintiff not to worry about it. *Id.* Plaintiff took his shower and then asked for the water to be turned off. *Id.* When Barber returned to turn off the water, Plaintiff again showed her that the cell was flooded. *Id.*

Thereafter, Williams came back to Plaintiff's cell and turned the water on in both Plaintiff's cell and the cell next to his. *Id.* Plaintiff again told Williams that the shower worked but the drain was clogged. *Id.* At that point, Williams began arguing with the inmate in the cell next to Plaintiff's cell. *Id.* Plaintiff asked Williams to call maintenance to unclog Plaintiff's drain. *Id.*

Williams then told IRT Commander Ersell McCullen, "I want him," pointing to Plaintiff's cell. *Id.* McCullen asked Williams if he was sure, and Williams repeated his statement but told the commander to get the inmate in another cell first. *Id.* Williams

remained in the dorm after that, arguing back and forth and threatening inmates. *Id.* McCullen told his squad to suit up. *Id.* After doing so, McCullen returned to the dorm with his squad and beat the offender that Williams had said to get first. *Id.* at 4-5. Williams then told McCullen to get Plaintiff. *Id.* at 5.

When the IRT squad got to Plaintiff's cell, McCullen told Plaintiff that Plaintiff was being put in a strip cell. *Id.* Plaintiff asked why, and McCullen repeated the statement. *Id.* Plaintiff again asked why, and McCullen radioed for someone to open Plaintiff's cell door. *Id.* Once the door was open, IRT Officer Murray entered the cell in full riot gear with a shock shield followed by the rest of the squad. *Id.* McCullen was in the back of the squad recording the encounter. *Id.* Murray charged Plaintiff with the shock shield while other IRT officers followed behind. *Id.* The next thing that Plaintiff remembers, he woke up bent over his bunk being handcuffed and having ankle restraints put on while Murray was punching Plaintiff all over his body. *Id.* During this, McCullen was repeating, "stop resisting," while he recorded the IRT members from behind instead of recording Plaintiff. *Id.*

Plaintiff was carried to the cell door with blood running down his head, ear, and shoulder. *Id.* Commander McCullen told Murray and the squad to escort Plaintiff to medical. *Id.* Plaintiff told McCullen and Murray that the leg irons were too tight for him to walk, but they belittled Plaintiff and told him he could walk. *Id.* at 5-6. The entire way to medical, the IRT squad was laughing at Plaintiff. *Id.* at 6. Plaintiff told them at some point that if they did not loosen the leg irons, they would have to carry Plaintiff, but McCullen and Murray laughed at Plaintiff. Plaintiff then dropped to his knees, forcing

Murray to carry Plaintiff.   *Id.*

In medical, Plaintiff was placed face down on the exam table.   *Id.*   Nurse Harris entered the room but did not do anything to help Plaintiff.   *Id.*   Instead, Nurse Harris said, "Oh, you cut your finger," even though there was no blood on Plaintiff's hands.   *Id.* Plaintiff was then carried back to his dorm by Murray while McCullen continued to record these events.   *Id.*

In the dorm, Murray and another IRT member set Plaintiff face down in feces and toilet water, but McCullen told them to pick Plaintiff back up out of the water.   *Id.* Williams was standing behind glass and ordered Murray and McCullen to put Plaintiff in a cell and strip him.   *Id.*   At that point, Williams laughed at Plaintiff and said, "It's just business."   *Id.*   Murray and McCullen put Plaintiff in the cell and removed his clothes. *Id.* at 6-7.

The cell that Plaintiff was put into was covered in feces, dirt, hair, mold, urine, rust, and pepper spray residue.   *Id.* at 7.   As soon as Plaintiff sat down, his legs and feet began to burn from the pepper spray residue.   *Id.*   Likewise, if Plaintiff touched anything in the cell, that part of his body began to burn.   *Id.*

When Sergeant Barber brought food trays, she told Plaintiff that he could not have one because he was on supervisor-only lock.   *Id.*   Even if this were the case, Barber could have fed him, as she was a supervisor.   *Id.*   Nevertheless, Barber continued to tell him this for two days, such that Plaintiff did not receive any food until breakfast on April 27, 2022.   *Id.*   In this time, Plaintiff was also not given any personal hygiene products, clothing, showers, mattress, sheet, blanket, toilet paper, or cup for drinking water.   *Id.*

For eight days thereafter, Plaintiff asked Nurse Joseph, Nurse Harris, Deputy Warden Williams, and Sergeant Barber for medical attention, clothing, his property, a shower, and to be removed from the strip cell, but Plaintiff stayed in the strip cell under Williams' and McCullen's orders until May 3, 2022. *Id.* When Plaintiff was released from the strip cell, he was given a jumpsuit, a pair of shorts, a pair of socks, and a state-issued t-shirt by Unit Manager Turner. *Id.* He was also put into a cell with a mattress and one sheet. *Id.*

Plaintiff did not receive an inventory sheet for his property that was taken from his previous cell, and now all his property is missing. *Id.* Deputy Warden Williams told Plaintiff that he would find Plaintiff's property, but Plaintiff has apparently not received any of it back. *Id.*

Plaintiff received a disciplinary report from McCullen for obstructing staff duties and failure to follow instructions. *Id.* Deputy Warden of Security George Ball was the reviewing supervisor, and Deputy Warden Williams served the disciplinary report on Plaintiff on April 24, 2022. *Id.* After checking his disciplinary history, Plaintiff learned that he was secretly issued a second disciplinary report with the same dates, times, and factual statements saying that Plaintiff was causing flooding and refused to stop after being given instructions. *Id.* at 8-9. Plaintiff was found not guilty of failure to follow instructions, but he was apparently found guilty of obstructing staff duties, as he received ninety days of no phone or store visitation for each disciplinary report, for a total of six months with these restrictions. *Id.* at 9.

III.   Plaintiff's Claims

    A.   CERT Officer Wellmaker

Plaintiff names CERT Officer Braddeus Wellmaker as a defendant to this action. Any claim as to Wellmaker does not appear to be properly joined to Plaintiff's other claims. In particular, Rule 20(a)(2) of the Federal Rules of Civil Procedure permits joinder of defendants only when the right to relief asserted arises "out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action."  Here, Plaintiff's claims as to Wellmaker do not appear to be related to the other claims in this case, which arise out of separate events that occurred nearly two weeks after Plaintiff's encounter with Wellmaker. Accordingly, it is **RECOMMENDED** that Plaintiff's claim as to Wellmaker be **DISMISSED WITHOUT PREJUDICE** for improper joinder.

    B.   Deputy Warden Joe Williams

      1. Excessive Force

It appears that Plaintiff may have intended to state a claim for excessive force against Deputy Warden Joe Williams. Plaintiff asserts that Williams directed McCullen to get Plaintiff, presumably to put him in the strip cell, where he alleges he was beaten by the IRT members.

The Eighth Amendment clearly prohibits the unnecessary and wanton infliction of pain, the infliction of pain without penological justification, and the infliction of pain grossly disproportionate to the severity of the offense.  *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).  To state an

Eighth Amendment claim in this context, a plaintiff must allege conduct by a defendant that was objectively harmful enough to establish a constitutional violation and that the defendant acted with a sufficiently culpable state of mind, *i.e.*, that the defendant acted maliciously and sadistically to cause harm.   *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

To state a claim against a supervisory official, a prisoner must allege facts showing either that the supervisor personally participated in the alleged constitutional violation or that there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation.   *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1086-87 (11th Cir. 1986).   A causal connection may be shown by alleging facts demonstrating that the official either "(1) instituted a custom or policy which resulted in a violation of the plaintiff's constitutional rights; (2) directed his subordinates to act unlawfully; or (3) failed to stop his subordinates from acting unlawfully when he knew they would."   *Gross v. White*, 340 F. App'x 527, 531 (11th Cir. 2009) (per curiam) (citing *Goebert v. Lee County*, 510 F.3d 1312, 1331 (11th Cir. 2007)).

Plaintiff alleges that he was badly beaten when he asked why he was being put on strip cell.   Plaintiff does not allege facts showing that Williams personally participated in the use of force, but his allegations, accepted as true and construed in his favor, suggest that Williams may have known that McCullen and his team would use excessive force against Plaintiff.   In particular, Plaintiff alleges that McCullen had just beaten up another inmate when Williams told McCullen to get Plaintiff as well.   It is unclear at this stage whether Plaintiff will be able to present evidence showing that Williams knowingly allowed or directed the IRT squad to use excessive force, but at the preliminary review

stage, it cannot be said that this claim is frivolous.   Accordingly, Plaintiff will be permitted to proceed for further factual development on an excessive force claim against Deputy Warden Williams.

### 2.  Conditions of Confinement in Strip Cell

Plaintiff also asserts that Williams kept Plaintiff on strip cell restrictions for eight days, denying him medical attention, clothing, and hygiene products during this time. Additionally, Plaintiff alleges that the cell that he was in was dirty and contained so much pepper spray residue that, if Plaintiff touched anything in the cell, that part of his body would burn because of the residue.

The Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S 337, 349 (1981), but it also does not permit inhumane conditions, and it is settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."   *Helling v. McKinney*, 509 U.S. 25, 31 (1993).   In this regard, the Eighth Amendment, which prohibits "cruel and unusual punishments," places restraints on prison officials such as by preventing them from using excessive physical force against prisoners.   *See Hudson v. McMilllian*, 503 U.S. 1 (1992). These officials also must provide humane conditions of confinement; "ensure that inmates receive adequate food, clothing, shelter, and medical care;" and "'take reasonable measures to guarantee the safety of the inmates.'"   *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

Accepting Plaintiff's allegations as true and construing them in his favor, it appears possible that the conditions in the strip cell violated the Eighth Amendment.   Thus,

Plaintiff will also be permitted to proceed for further factual development on a conditions of confinement claim against Deputy Warden Williams with regard to the eight days that he was placed in this particular cell under strip cell conditions.

### 3.   Deprivation of Property

Plaintiff also asserts that some of his property was taken and was never returned to him.   Plaintiff asserts that Williams told Plaintiff that he would get his property back, but Plaintiff's did not receive his property.   To state a claim for denial of due process, a plaintiff must allege that he was deprived of life, liberty, or property without due process of law.   *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (recognizing that prisoners "may not be deprived of life, liberty, or property without due process of law").   The Due Process Clause of the Fourteenth Amendment is not offended when a government official deprives an individual of his personal property if the state makes available a meaningful post-deprivation remedy.   *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).   The State of Georgia provides Plaintiff an adequate post-deprivation remedy for the loss of his property through a state court action.   *See* O.C.G.A. §§ 51-10-1 through 51-10-6; *see also Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991) (finding no due process violation for the retention of the plaintiffs' cash by the police because Georgia "has provided an adequate post deprivation remedy" in O.C.G.A. § 51-10-1).   Thus, it is **RECOMMENDED** that any due process claim based on the deprivation of his property be **DISMISSED WITHOUT PREJUDICE**.

### 4.   Disciplinary Report

Plaintiff also asserts that Deputy Warden Williams served a disciplinary report on

Plaintiff.   Plaintiff does not say what part Williams played in any hearing or subsequent punishment relating to the disciplinary report.   Plaintiff does allege that he was secretly given an additional disciplinary report and was put on store and phone restrictions for an additional ninety days under this secret disciplinary report.

The Due Process Clause "does not directly protect an inmate from changes in the conditions of his confinement" or create a constitutionally-protected interest "in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters."   *Chandler v. Baird*, 926 F.2d 1057, 1060 (11th Cir. 1991) (quoting *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)).   Instead, due process protections are only evoked in cases where the change in conditions is so severe that it (1) essentially exceeds the sentence imposed by the court of conviction or (2) imposes atypical and significant hardship on the prisoner in relation to the ordinary incidents of prison life.   *Id.* at 484.   A prisoner may show that he has been subject to an atypical and significant hardship by showing that the restrictive conditions to which he is subjected "are particularly harsh compared to ordinary prison life" or that "he remains subject to those conditions for a significantly long time."   *Earl v. Racine Cnty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013) (per curiam).

Plaintiff's allegations do not show that Plaintiff did not receive appropriate process with regard to the original disciplinary report that was served on him by Williams. Moreover, it is not clear from Plaintiff's allegations what role, if any, Deputy Warden Williams played in imposing this additional punishment under the purportedly secret disciplinary report.   Even if Williams was involved, ninety days of phone and store

restrictions are not the type of atypical and significant hardship necessary to give rise to a due process claim. *See Sandin v. Connor*, 515 U.S. 472, 485 (1995) (holding that restrictions on privileges generally do not "present a dramatic departure from the basic conditions" of a plaintiff's sentence). Thus, it is **RECOMMENDED** that Plaintiff's due process claim based on a secret disciplinary report by **DISMISSED WITHOUT PREJUDICE**.

      B. <u>Ersell McCullen</u>

      1. <u>Excessive Force</u>

Plaintiff next names IRT Commander Ersell McCullen. He asserts that McMullen came to Plaintiff's cell door and told Plaintiff he was being put on strip cell. When Plaintiff asked why, McCullen had the door opened and had Plaintiff forcibly removed from the cell. During the removal, Plaintiff was charged with a shock shield, handcuffed, put in leg irons, punched, and hit. Plaintiff also alleges that McCullen forced him to walk in leg irons that were too tight. These allegations raise a potential claim for excessive force.

As set forth above, the Eighth Amendment clearly prohibits the unnecessary and wanton infliction of pain, the infliction of pain without penological justification, and the infliction of pain grossly disproportionate to the severity of the offense. *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). To state an Eighth Amendment claim in this context, a plaintiff must allege conduct by a defendant that was objectively harmful enough to establish a constitutional violation and that the defendant acted with a sufficiently culpable state of mind, *i.e.*, that the defendant

acted maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

Plaintiff's allegations suggest that the amount of force used may have exceeded any justification for the use of force. Although it is not clear from Plaintiff's allegations that McCullen personally participated in the use of force, it appears that he was present and directing the other IRT members in the use of force. These allegations are sufficient to allow Plaintiff to proceed for further factual development on an excessive force claim against Ersell McCullen.

2.   <u>Due Process</u>

Plaintiff also alleges that McCullen wrote the disciplinary report against Plaintiff. In this regard, Plaintiff's allegations as to McCullen are similar to his allegations against Deputy Warden Williams. Thus, for the same reasons that it is recommended that the due process claim against Williams be dismissed, it is also **RECOMMENDED** that Plaintiff's due process claim based on the second disciplinary report be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

3.   <u>Deliberate Indifference to a Serious Medical Need</u>

Plaintiff's allegations may also be read to raise a potential claim against McCullen for deliberate indifference to a serious medical need. In order to state a claim for deliberate indifference to a serious medical need, a prisoner must allege facts to show that he had a medical need that was objectively serious and that the defendant was deliberately indifferent to that need. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one

15

that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation marks and citation omitted).   Further, the condition must be one that would pose a "substantial risk of serious harm" if left unattended.   *Farrow*, 40 F.3d at 1243.

An official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health and safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).   Additionally, the disregard of risk must be "by conduct that is more than mere negligence."[1]  *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011). "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all."   *Id.*   A prison official "who delays necessary treatment for non-medical reasons may exhibit deliberate indifference."   *Id.* Finally, "[a]n Eighth Amendment violation may also occur when state officials knowingly interfere with a physician's prescribed course of treatment."   *Id.*

Plaintiff alleges that he was injured in the beating.   Although it is not entirely clear from Plaintiff's complaint whether he had a serious medical need, he does allege that he was badly bleeding when he was taken to medical.   Once there, Plaintiff asserts that Nurse Harris made a statement about his finger but failed to give him any meaningful medical attention.   McCullen was present and viewed these circumstances and did not help Plaintiff get any medical attention.   Thus, Plaintiff will also be permitted to proceed on a

---

[1]Other cases have held that the conduct must be by more than gross negligence.   *See, e.g., Townsend v. Jefferson Cty.*, 601 F.3d 1152 (11th Cir. 2010).

deliberate indifference to a serious medical need claim against McCullen.

      C.     <u>IRT Member Murray</u>

      1.   <u>Excessive Force</u>

Plaintiff's allegations with regard to IRT Member Murray are similar to his excessive force allegations against McCullen.   Thus, Plaintiff will also be permitted to proceed for further factual development on an excessive force claim against Murray.

      2.   <u>Deliberate Indifference to a Serious Medical Need</u>

Plaintiff's allegations against Murray also are similar to those against McCullen with regard to a deliberate indifference to a serious medical need claim.   Accordingly, Plaintiff will be allowed to proceed for further factual development on a deliberate indifference claim against Murray as well.

      D.     <u>Sergeant Heather Barber</u>

Plaintiff asserts that Sergeant Heather Barber refused to feed Plaintiff for two days. Additionally, for the eight days that Plaintiff was on strip cell, he asked Barber for medical attention, hygiene products, and a shower, among other things, but she apparently refused all of his requests.   These allegations are similar to those Plaintiff asserted against Deputy Warden Williams with regard to the conditions of confinement for those eight days.   Thus, Plaintiff will be permitted to proceed for further factual development on a conditions of confinement claim relating to the time the Plaintiff was in the strip cell.

      E.     <u>Nurse Harris</u>

Plaintiff asserts that Nurse Harris was on duty in medical when Plaintiff was brought in following the use of force against him.   Plaintiff alleges that, at the time he was brought

in, he had just been badly beaten and was bleeding, but Nurse Harris declined to do anything to help Plaintiff.   These allegations raise a potential claim for deliberate indifference to a serious medical need.

As with the claims against McCullen and Murray, Plaintiff's allegations suggest that he may have had a serious medical need insofar as he had been beaten and was bleeding. Moreover, it seems that Nurse Harris's refusal to treat Plaintiff may have reached the level of deliberate indifference.   Thus, Plaintiff will also be allowed to proceed for further factual development on his deliberate indifference to a serious medical need claim against Nurse Harris.

IV.   Conclusion

Thus, for the reasons set forth above, Plaintiff will be permitted to proceed for further factual development on his excessive force claims against Deputy Warden Joe Williams, Commander Ersell McCullen, and IRT Member Murray, as well as his conditions of confinement claims against Williams and Sergeant Heather Barber and his deliberate indifference to a serious medical need claim against McCullen, Murray, and Nurse Harris.   It is **RECOMMENDED** that any claims against CERT Officer Braddeus Wellmaker, the deprivation of property claim against Deputy Warden Williams, and the due process claims against Williams and McCullen based on a second disciplinary report be **DISMISSED WITHOUT PREJUDICE** as discussed above.

## MOTION FOR SERVICE

Plaintiff has also filed a motion or service by the United States Marshal Service, asserting that he is unable to serve the defendants because, among other things, he has no

communication with outside friends or family, he has no financial assistance, and he is unable to send someone to perfect service.   Mot. for Serv., ECF No. 16.   This motion is **GRANTED**, and service through the United States Marshals is ordered herein.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this order and recommendation with the United States District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this order and recommendation.   The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.   Any objection is limited in length to **TWENTY (20) PAGES**.   *See* M.D. Ga. L.R. 7.4.   Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.   *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Although Plaintiff was denied leave to proceed *in forma pauperis*, he has moved for service of process to be made on his behalf, and that motion was granted above.   Thus, for those reasons discussed herein, it is hereby **ORDERED** that service be made on **DEFENDANTS DEPUTY WARDEN JOE WILLIAMS, COMMANDER ERSELL MCCULLEN, IRT MEMBER MURRAY, SERGEANT HEATHER BARBER, and NURSE HARRIS,** and that they file an Answer, or other response as appropriate under the Federal Rules, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.   Defendants are also reminded of the duty to avoid unnecessary service expenses, and the possible

imposition of expenses for failure to waive service.

## DUTY TO ADVISE OF ADDRESS CHANGE

During this action, all parties shall at all times keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.   Failure to promptly advise the Clerk of any change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) for failure to prosecute.   Defendant is advised that he is expected to diligently defend all allegations made against him and to file timely dispositive motions as hereinafter directed.   This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.   A party need not serve the opposing party by mail if the opposing party is represented by counsel.   In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.   If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and

where (i.e., at what address), when service was made, and how service was accomplished (i.e., by U.S. Mail, by personal service, etc.).

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of Defendants from whom discovery is sought by Plaintiff. Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.   Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.   Plaintiff's deposition may be taken at any time during the time period hereinafter set out, provided that prior arrangements are made with his custodian.   Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Fed. R. Civ. P. 37 of the Federal Rules of Civil Procedure.

**IT IS HEREBY ORDERED** that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by Defendants (whichever comes first) unless an extension is otherwise granted by the Court upon a showing of good cause therefor or a protective order is sought by Defendants and granted by the Court.   This 90-day period shall run separately as to each Defendant beginning on the date of filing of each Defendant's answer or dispositive motion (whichever comes first).   The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall <u>not</u> be filed with the Clerk of Court.   No party shall be

required to respond to any discovery not directed to him or served upon him by the opposing counsel/party. The undersigned incorporates herein those parts of the Local Rules imposing the following limitations on discovery: except with written permission of the Court first obtained, INTERROGATORIES may not exceed TWENTY-FIVE (25) to each party, REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and REQUESTS FOR ADMISSIONS under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party is required to respond to any request which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

Dismissal of this action or requests for judgment will not be considered by the Court in the absence of a separate motion accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but no later than one hundred-twenty (120) days from when the discovery period begins.

**SO ORDERED and RECOMMENDED**, this 30th day of January, 2024.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge